The executor of the estate of Elton M. Barksdale appeals the judgment of the circuit court holding that Ruby Barksdale, wife of the decedent, was entitled to an elective share in the estate.
Following the death of Elton Barksdale in November 1985, his son, Billie M. Barksdale, filed a petition in the Probate Court of Etowah County to probate his will. The will was admitted to probate, and letters testamentary were granted to Billie as executor. The deceased made the following bequests:
 "III. To my wife, Ruby Barksdale, I bequeath outright all my cash money and all my interest in our furniture, including all my antiques, and one-half of my interest in any cattle and live stock. I also will, devise and bequeath to my said wife the use of our home and twenty acres of land on which the home is located during her lifetime.
". . . .
 "VI. All the rest and residue of my real estate I will, devise and bequeath to my said wife during her lifetime, my said wife to use or rent said real estate as she sees fit. At the death of my said wife, I *Page 1007 
will, devise and bequeath the rest and residue of my real estate to my daughter Joyce Barksdale McClendon, and my son, Billie M. Barksdale."
In January 1986, Ruby Barksdale filed a petition for an elective share pursuant to § 43-8-70, Code of Alabama (1975), and removed the proceedings to the Circuit Court of Etowah County. She thereafter, in March, moved for the appointment of appraisers, and, following a hearing, the judge ordered that said appointment would be made in the event that she did not accept the written appraisals of the executor. Ruby rejected the valuation of the executor, and, pursuant to this order, appraisers were appointed.
The executor argues that the court determined the issues and facts involved without an evidentiary hearing and thereby denied the estate due process of law. We disagree. Upon motion by the widow for final settlement, a hearing was held on May 12, 1987, wherein the valuation of assets of the estate was at issue. Although the executor was present at the hearing, the executor offered no evidence as to the valuation of assets; however, following that hearing, and upon the executor's request, the court granted the executor one week to file an answer in response to the motion for final settlement. The answer was due to be filed by June 9, 1987; however, it was not filed until December 14, 1987. In February 1988, the judge determined the value of the estate and the amount of the elective share. The executor was given 30 days to object to the values, and he did file an objection. The record indicates that his objections were set for hearing in April, but no evidence was offered by the executor at that hearing. We are of the opinion that the executor was given ample opportunity to offer evidence on behalf of the estate.
The executor also contends that Ruby Barksdale was not entitled to an elective share plus a homestead and exempt property allowance. Again, we disagree. The appellee appropriately points out that this very issue was addressed inGarrard v. Lang, 514 So.2d 933 (Ala. 1987), wherein we held as follows:
 "The relevant statutes are clear. Homestead allowance is awarded irrespective of a surviving spouse's decision to take an elective share. Alabama Code (1975), § 43-8-74. . . . Homestead allowance is in addition to any other share passing to the spouse. Alabama Code (1975), § 43-8-110."
Garrard, supra, at 934. In determining the widow's share inGarrard, this Court stated:
 "The amounts to be distributed are stated clearly in the statutes: one-third of the estate for the elective share, Alabama Code (1975), § 43-8-70; $3,500.00 for exempt property, § 43-8-111; and $6,000.00 for the homestead allowance, § 43-8-110. The trial court erred when it calculated Garrard's elective share as being one-third of the gross estate. The gross estate should have been reduced by the homestead and exempt property allowances prior to calculation of Garrard's elective share."
Id.
Finally, the executor argues that the trial court erred in calculating the amount of Ruby Barksdale's elective share. Both the executor and Ms. Barksdale agree that the trial court made mathematical errors in computing the elective share, as shown below. Our total of the items listed in the judge's order reflects a mistake in addition. We find the total gross estate to be $378,688, rather than $387,697 as noted below by the trial court:
 "Cattle (sold by Billy Barksdale) $ 40,000.00 Naylor cattle (one-half) 1,775.00 Scrap (per appraisal) 272.00 1978 Pick-up (per appraisal) 1,800.00 1981 Ford (per appraisal) 2,000.00 Farm equipment (per appraisal) 1,340.00 Antiques (per court appraisal) 16,000.00 Land (per court appraisal) 276,925.00 *Page 1008 
Chimney money $ 6,040.00 Income tax refund 502.00 Life insurance 3,000.00 Home insurance 15,000.00 Contents insurance 7,500.00 Spring place rent 834.00 Note owed by Billy Barksdale 5,500.00 Studebaker 100.00 Irrigation pump 100.00 ------------ "Total $387,697.00"
_______________
We further note that in his amended order of September 27, 1988, the judge accurately added the following items to the estate:
 "Additional Cattle money $1,284.00 1986 Hay Sale money 965.00 Interest on life insurance[1] 417.00 Interest on fire loss insurance money 2,991.38 Current use tax refund 432.99 ----------- "Total $6,090.37"
_______________
Therefore, the deceased's total estate should have been valued at $384,778.37 ($378,688 + $6,090.37). This total, less exemptions for homestead, exempt property, and family allowance, totaling $15,500, and allowed claims against the estate, totaling $1,712.40, leaves Barksdale's estate at $367,565.97. Ruby Barksdale's elective share is one-third of this sum ($367,565.97), or $122,521.99. To this amount are added her exemptions totaling $15,500, plus $4,888.11[2] (interest on cattle money), or $142,910.10. The court subtracted Ruby's share of the expenses of administration of the estate, as well as other indebtedness of $237.41 (for taxes) and $1,000 (insurance money) which the court found to total $9,967.89. We find error in the court's mathematics. The expenses of administration were listed by the court as follows:
 "Antique expenses $ 300.00 Cattle expenses 1,404.58 Land expenses 2,876.28 General expenses 2,114.16 Checking service charges 72.66 Equipment Rental 2,475.00 Executor's Commissions 5,122.75 Additional attorneys fees 16,950.00"
_______________
The court incorrectly calculated the total of the above expenses to be $26,192.68; the actual total is $31,315.43. Therefore, Ruby Barksdale's proportionate expenses (33 1/3%) are $10,438.48, plus the above-mentioned indebtedness totaling $1,237.41. The total is $11,675.89.
The net award to Ruby Barksdale, therefore, should be $142,910.10, minus $11,675.89, or $131,234.21.
The judgment of the circuit court is modified to reflect the figures set out above, and, as modified, is affirmed.
AFFIRMED AS MODIFIED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur.
[1] The trial judge also incorrectly added the $3000 insurance benefits in his amended order. Both parties agree that this is inaccurate because the $3000 was added to the estate in his first order, thereby leaving only the interest to be added.
[2] The sum of $4,888.11 added to Ruby Barksdale's share of the estate constituted interest on cattle money to which she was entitled. *Page 1009